## THE FIDELIA.

## THE GENE TUNNEY.

## LE BOEUF et al. v. UNITED STATES.

### No. 6401.

Circuit Court of Appeals, Fifth Circuit.

May 19, 1932.

Edwin H. Grace, of New Orleans, La., for appellants.

Edmond E. Talbot, U. S. Atty., and P. M. Flanagan, Asst. U. S. Atty., both of New Orleans, La.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Two separate judgments are brought up by this appeal. The United States filed separate libels in rem for the forfeiture of the gasoline boats, Fidelia and Gene Tunney, under the provisions of Rev. St. § 4377 (46 USCA § 325), which provides that whenever any licensed vessel is employed in any other trade than that for which she is licensed, such vessel with her tackle, apparel, furniture, and cargo found on board of her shall be forfeited. The vessels were claimed respective-

ly by appellants Le Boeuf and Vaughan as owners. There is no dispute as to the material facts.

In the case of the Fidelia it appears that on December 3, 1930, the coast guard cutter Mahoning was cruising in the Gulf of Mexico, about 15 to 18 miles from the nearest land of the United States. Those on board of her saw the Fidelia about one and a half miles to two miles away, the cutter headed towards her and the Fidelia then changed her course. The cutter fired a blank shot which should have been heard on the Fidelia but she did not stop. The cutter then fired a solid shot across her bow and the Fidelia hove to. When the cutter came alongside her, the commanding officer saw sacks on her deck which he judged contained liquor as they were about the usual size and type of package used for that purpose. He asked the captain what he had for cargo and was told he had potatoes. He then sent men on board and it was discovered that the boat was loaded with a cargo of intoxicating liquor. The Fidelia had no manifest for the cargo and no permit to transport it. She was seized and brought into New Orleans and turned over to the collector of customs.

With regard to the Gene Tunney it appears that on December 30, 1930, the coast guard cutter Forward was cruising in the Gulf of Mexico, about 35 miles from the nearest American coast line. Those on board of her observed a large schooner and as they drew near to investigate they saw a small boat, which subsequently proved to be the Gene Tunney, heading away from the schooner. The small boat had been concealed by the hull of the schooner up to that time. The coast guard blew her whistle and fired three blank shots. The schooner then ran up the British flag, but the small boat kept on her course. This was about 4:30 p. m. The cutter gave chase, in the course of which about 19 shots were fired, but the Tunney kept on. The Tunney was overhauled about 6:10 p. m. She was then thirty-one miles from the nearest land which was Chandelier Island. The cutter turned her searchlight on the Tunney and those on board saw cases on her deck which they believed contained liquor. She was stopped and searched, with the result that a cargo of intoxicating liquor was discovered.

She had neither manifest nor permit to transport the liquor. She was seized and brought in.

The vessels were licensed for the coasting trade, with the provision that they should not transport intoxicating liquor. If their licenses were violated, they were liable to seizure and condemnation under the provisions of section 4377, Rev. St. (46 USCA § 325), and the United States could disregard the National Prohibition Act (27 USCA). United States v. The Ruth Mildred, 52 S. Ct. 473, 76 L. Ed. ——, decided by the Supreme Court May 2, 1932. The objection is made, however, that the fact that each carried a cargo of intoxicating liquor was discovered by an unlawful search and seizure; that the coast guard acted without probable cause and without authority to board the vessels outside of the twelve-mile limit. Seasonable objection was made to the introduction of evidence secured by the search and seizure.

It is settled that coast guard cutters have authority to operate on the high seas and on probable cause may stop and search American vessels to determine whether the revenue laws are being violated. Maul v. U. S., 274 U. S. 501, 47 S. Ct. 735, 71 L. Ed. 1171.

The actions of each vessel when first sighted gave the coast guard probable cause for making a further investigation. When the cutters went alongside of the launches the sacks and cases evidently containing liquor were seen on deck. It would be ridiculous to say that experienced revenue officers would have to close their eyes to the obvious. The discovery of liquor on deck was not as the result of a search and fully justified further inquiry as to the license, manifest, permit to transport liquor, and other documents required to be on board and search to determine whether the cargo carried violated the license. That the cargo was liquor conclusively proved the violation and warranted the seizure of the vessel and her subsequent condemnation. The evidence was admissible. United States v. Lee, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202; Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.

The record presents no reversible error.

Affirmed.